UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE NARGIZ,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>STUART SHERMAN, et al.,<br><br>　　　　　Defendants. | 1:19-cv-01173-AWI-GSA-PC<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE PROCEED AGAINST DEFENDANTS SHERMAN AND MILAN FOR ADVERSE CONDITIONS OF CONFINEMENT UNDER THE EIGHTH AMENDMENT, AND DISMISSING ALL OTHER CLAIMS**<br>**(ECF No. 13.)**<br><br>**OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS** |

**I.    BACKGROUND**

　　　Kyle Nargiz ("Plaintiff") is a former state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. On August 28, 2019, Plaintiff filed the Complaint commencing this action. (ECF No. 1.) On August 31, 2020, the court issued an order dismissing the Complaint for failure to state a claim, with leave to amend. (ECF No. 12.) On October 1, 2020, Plaintiff filed the First Amended Complaint which is now before the court for screening. (ECF No. 13.)  28 U.S.C. § 1915.

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is now out of custody. The events at issue in the First Amended Complaint allegedly took place at the California Substance Abuse Treatment Facility (SATF) in Corcoran, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff names as defendants Stuart Sherman (Warden of SATF) and Richard Milan (Superintendent of Building Trades) (collectively, "Defendants"). A summary of Plaintiff's allegations follows:

Plaintiff alleges that SATF was constructed approximately twenty years ago and has not undergone any significant modification or repair since then. SATF consists of seven separate yards, each having a design capacity of approximately 500 inmates. Plaintiff has been housed at SATF on the F-Yard, a level 2 Special Needs Yard reserved for inmates who, because of their lack of disciplinary problems, qualify to be housed there. There are three housing units on F-Yard. In addition to the three housing units, F-Yard also contains a separate kitchen and dining facility which are subject to health and sanitation standards.

On January 29, 2019, at FAC F Dining Hall, Plaintiff informed C/O Sanchez [not a defendant] about a roach on his tray, and Sanchez replaced the food tray. Facility F dining and kitchen is infested with roaches, feathers, and contaminated water from the ceiling falling onto Plaintiff's head, face, and food. On February 15, 2019, Plaintiff was treated by medical and prescribed Loperamide Hydrochloride for diarrhea. On February 27, 2019, Plaintiff was seen and treated by the psychiatrist who prescribed him Visitril for his PTSD and nightmares from finding a roach in his food. Plaintiff has experienced lasting collateral consequences and presumes to have satisfied the controversy. Collateral consequences will remain after Plaintiff's release from incarceration from SATF. Plaintiff continues to suffer from his PTSD.

Defendants' policies, customs, and practices for roof repair, infestations of vermin, water contaminated with fecal matter, contaminated water leaking onto dining tables while inmates are eating, and disintegrating ceiling tiles are insufficient to abate a substantial risk of harm. Defendants submit work orders and then deliberately ignore infestations and leaking roofs. Even when it is not raining, Plaintiff and other inmates are seated at tables under exposed ceilings from which maggots and mice fall during mealtime.

Defendants are aware that water leaks and damaged ceiling tiles create paths for transmission of harmful pathogens. Since 2013, individuals have sued defendant Sherman for vermin and roof leakages at his facilities. In 2019, the conditions are rampant. Defendant Sherman ignores the complaints and lets the facility deteriorate. Plaintiff has had contaminated water fall from the ceiling onto his food tray and head. Plaintiff believes that SATF is built with

///

defective materials and methods of construction resulting in ineffective repairs.  There is continuous flooding and many ceiling tiles are missing.

Inside the dining hall there is an interior grid suspension system attached to the ceiling to hold the ceiling tiles in place.  The grid has corroded; water has entered the electrical light fixtures; and mold has grown on the ceiling tiles, grid work, heating and ventilation systems, insulation, and walls.  There is water damage to the ceiling insulation, electrical lighting and electrical wiring for the past several years.

For the past several years water has entered the Facility-F dining hall when it is raining. The manufacturer's instructions provide that the ceiling tiles are to be installed in an area that remains dry, clean, and protected from the elements.  The ceiling tiles weigh about five pounds when they are dry, but twenty pounds when saturated in water.  When the tiles get wet they collapse, warp, and fall from the grid system.  None of the systems are designed to be exposed to water.  Rainwater corrodes the wiring, connections, and components over time, creating the possibility that a short circuit will occur.

Defendant Milan has known about the deteriorating physical plant at SATF for many years but has failed and refused to repair it.   Instead of repairing the roof, Defendants continue to replace the damaged ceiling tiles with new ones, or leave the damaged tiles in place.

Plaintiff must collect and eat his food in the Facility F dining hall.  He has to walk and consume his food where the water has pooled on the floor, exposing him to danger the tiles will fall, risk of infection from mold, and risk of electrocution.  Plaintiff has had the water drip on his clothing, food, and head.

On January 27, 2019, inmate Paul John Denham informed Defendants Sherman and Milan of the condition of the dining hall and the ceiling.  Defendant Milan responded that the prison "has multiple leaks throughout the institution [and] due to staffing and budget issues, plant operations cannot keep up with the work orders submitted for leaking roofs."

Defendants have been aware of the fact that the F-Yard dining facility has been infested with vermin for many years.  There have been numerous complaints by staff and inmates, all which have been ignored.  On November 4, 2018, Facility-F I.A.C. Executive Body Food

Services Chairman Williams wrote a memo stating that the kitchen has a roach infestation, black mold is present in the food line and restrooms, and the B section ventilation system is located directly over the food and is blowing out roaches.[1] Plaintiff is sickened by the unabated filth and unsanitary conditions in which his food is prepared, handled, and served. Plaintiff has had roaches and contaminated water from the ceiling fall onto his food tray. Plaintiff immediately reported the incident to the correctional officer monitoring the meal. Plaintiff has to pick at his food, and if the food is not hot enough Plaintiff cannot eat the food since being served a roach with his meal.

The Government Claims Program completed its investigation of Plaintiff's claim and rejected it on March 21, 2019. Claim 19001545.

Plaintiff suffered pain and suffering, shame, humiliation, degradation, extreme anxiety, emotional distress, mental distress, and other injuries.

As relief, Plaintiff requests monetary damages, including punitive and exemplary damages, injunctive relief, and costs of suit.

**IV.    PLAINTIFF'S CLAIMS**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490

---

[1] In the First Amended Complaint, Plaintiff refers to an attached exhibit ("See Attached Memo dated November 4, 2018"). (ECF No. 13 at 15:24-25.) However, there were no exhibits attached to the First Amended Complaint or otherwise submitted to the court.

U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)); "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A.     **Official and Individual Capacity**

Where a plaintiff is seeking damages against a state official, it is presumed that they are being sued in their individual capacity because an official capacity suit for damages would be barred. See Romano v. Bible, 169 F.3d 1182, 1186 (9th Cir. 1999). However, to the extent a plaintiff seeks injunctive relief, such claims must be against the official in their official capacity. See Agua Caliente Bd. of Cahuilla Indians v. Hardin, 223 F.3d 1041, 1046 (9th Cir. 2000) (recognizing the Ex parte Young exception to Eleventh Amendment immunity "for prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law"); see also, e.g., Ross v. Stinewand, No. CV 14-5291-

RGK (KK), 2014 U.S. Dist. LEXIS 115755 at *6, 2014 WL 4109578, at *3 (C.D. Cal. Aug. 18, 2014) ("Plaintiff is presumably suing all of the defendants in their official capacity because he seeks injunctive relief . . . .").

The Supreme Court has ruled that "[t]he real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading." Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 270 (1997). Similarly, in his concurring opinion to Pena v. Gardner, Judge Nelson argued that simply glancing at the caption of the case is not "all that is required." 976 F.2d 469, 474 (9th Cir. 1992), as amended (Oct. 9, 1992) (Nelson, T.G., concurring). Instead, "courts must still analyze the specifics of the conduct involved when determining whether a suit is against an official in his or her 'official' or 'individual' capacity." Id.

Here, Plaintiff states in the Complaint that he is suing Defendants in their individual capacities. (ECF No. 1 at 8:3,6-7.) However, because Plaintiff seeks damages and injunctive relief against the Defendants, the Complaint must be liberally construed as suing Defendants in their individual and official capacities. See Watison v. Carter, 668 F.3d at 1108, 1112 (9th Cir. 2012) (*pro se* complaints are liberally construed).

### B.  Eighth Amendment - Adverse Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted). A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer v. Brennan, 511 U.S. 825, 847, 114

S.Ct. 1970 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Id. at 731.

"The occasional presence of a rodent is insufficient to establish the objective component of an Eighth Amendment claim, which requires that a deprivation be sufficiently serious," Jackson v. Walker, 2009 WL 1743639 at *8 (E.D. Cal. 2009). However, "a lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." Anderson v. Cnty. of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995); see also Johnson, 217 F.3d at 731-32; Hoptowit v. Spellman, 753 F.2d 779, 783 (9th Cir. 1985). The state is obligated to provide "'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it,'" and "the state health code, while not establishing 'constitutional minima,' is relevant in making a finding regarding the constitutionality of existing conditions." Jackson, 2009 WL 1743639, at *8 (citing Somers v. Thurman, 109 F.3d 614, 623 (9th Cir. 1997)).

### 1. **Awareness**

Plaintiff has demonstrated in the Complaint that the adverse conditions of confinement are sufficiently serious to state a claim and that Defendants knew about the conditions and the risk of harm to Plaintiff. Plaintiff alleges that both of the Defendants have known about the adverse conditions for years yet have not fixed the roof or otherwise made repairs that would stop water from coming into the building when it rains. Instead of repairing the roof, Defendants continue to replace the damaged ceiling tiles with new ones or leave the damaged tiles in place, which does not solve the problem. Plaintiff alleges that Defendant Milan has stated that the prison "has multiple leaks throughout the institution [and] due to staffing and budget issues, plant operations cannot keep up with the work orders submitted for leaking roofs." (ECF No. 1 at 13 ¶ 67.)

///

### 2. Personal Liability and Authority to Act

To be liable for an Eighth Amendment violation, a prison official must be able "to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition." Santiago v. Rabideau, No. 15 C 1856, 2019 WL 1747361, at *12 (N.D. Ill. Apr. 18, 2019) (citing Vance, 97 F.3d at 993; see also Gentry, 65 F.3d at 561 ("In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery.")). That is, the officer must be able to take some action.

The test for establishing personal responsibility was set forth in Gentry:

> "Of course, [the defendant prison official] cannot be personally liable under a theory of *respondeat superior*. However, "'[a]n official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent.'" That is, he "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. . . ."

Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). "'An official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent.'" Smith v. Rowe, 761 F.2d 360, 369 (7th Cir.1985) (quoting Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir.1982)).

Defendants' conduct in the face of the unsanitary conditions does not necessarily cause an inference that they are deliberately ignoring the conditions. However, the court finds that under Plaintiff's allegations, defendants Warden Stu Sherman and the Supervisor of Building Trades Richard Milan have authority to change policy or compel others to take the action needed to resolve the problem.

### 3. Deliberate Indifference

Courts have held that a jury should determine whether individuals in positions like that occupied by Warden Sherman and Supervisor Milan in this case took reasonable steps to address the adverse conditions at SATF sufficient to insulate them from liability. Santiago, 2019 WL

1747361, at *12 (citing see e.g., Gray v. Hardy, 826 F.3d 1000, 1009 (7th Cir. 2016) ("Knowingly persisting in an approach that does not make a dent in the problem is evidence from which a jury could infer deliberate indifference."); Bentz v. Hardy, 638 Fed. Appx. 535, 538 (7th Cir. 2016) (finding that "depending upon that extent, duration and kind of infestation an inmate was made to endure, a trier of fact still may reasonably find an Eighth Amendment violation occurred even without a showing of physical harm") (citation omitted).

Thus, based on the allegations in the First Amended Complaint, the court finds that Plaintiff states cognizable claims against Defendants Stu Sherman and Richard Milan, in their individual capacities, for unconstitutional conditions of confinement in violation of the Eighth Amendment.

### C. State Law Claims

Plaintiff brings claims against Defendants for violation of health and sanitation standards. To the extent that these are state laws or CDCR standards, Plaintiff is informed that violation of state law or CDCR rules is not sufficient to state a claim for relief under § 1983. To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367. In this instance, the Court has found cognizable federal claims in the First Amended Complaint.

California's Government Claims Act[2] establishes certain conditions precedent to the filing of a lawsuit against a public entity. State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1237, 90 P.3d 116, 118 (2004). "[A] plaintiff must timely file a claim for money or damages with the public entity, (§ 911.2.), and the failure to do so bars the plaintiff from bringing suit against that entity, (§ 945.4.)." Id. Compliance with the claim presentation requirement is an element of the cause of action, Bodde, 32 Cal.4th at 1240, 13 Cal.Rptr.3d 534, 90 P.3d 116, is required, Mangold v. California Public Utilities Com'n, 67 F.3d 1470, 1477 (9th Cir. 1995), and "failure

---

[2] Formerly known as the California Tort Claims Act. City of Stockton, 42 Cal.4th 730, 741-42 (Cal. 2007) (adopting the practice of using Government Claims Act rather than California Tort Claims Act).

to file a claim is fatal to a cause of action," Hacienda La Puente Unified School Dist. Of Los Angeles v. Honig, 976 F.2d 487, 495 (9th Cir. 1992); City of Stockton v. Superior Court, 42 Cal.4th 730, 738 (Cal. 2007) at 738; Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007).

District courts may decline to exercise jurisdiction over supplemental state law claims based on a number of factors, including "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." Barekat v. BPI Brea LLC, No. SACV2001365CJCADSX, 2020 WL 6065920, at *1 (C.D. Cal. Sept. 8, 2020) (quoting City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997). The district courts may decline to exercise supplemental jurisdiction over a claim under 28 U.S.C. § 1367(a) if-- **(1)** the claim raises a novel or complex issue of State law, **(2)** the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, **(3)** the district court has dismissed all claims over which it has original jurisdiction, or **(4)** in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(a).

Here, it appears that Plaintiff has met the claim presentation requirement contained in California Government Code § 900 *et seq*. Plaintiff alleges that he filed claim # 19001545 with the Government Claims Program, which completed its investigation of his claim and rejected it on March 21, 2019. However, Plaintiff has not provided sufficient information for the court to determine if Plaintiff states a cognizable state law claim against Defendants Sherman and Milan for violation of a state law, regulation, or rule. Plaintiff has not identified the statute, rule, or regulation at issue, or informed the court whether a private right of action exists upon which he can proceed. Therefore, the court recommends declining to exercise supplemental jurisdiction over this alleged claim.

        **D.**    <ins>**Damages for Emotional Injuries - Physical Injury Requirement**</ins>

Plaintiff is advised that the Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical

injury." 42 U.S.C. § 1997e(e). The physical injury "need not be significant but must be more than *de minimis*." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002) ) (back and leg pain and canker sore *de minimis*); see also Pierce v. County of Orange, 526 F.3d 1190, 1211-13 (9th Cir. 2008) (bladder infections and bed sores, which pose significant pain and health risks to paraplegics such as the plaintiff, were not *de minimis*). The physical injury requirement applies only to claims for mental or emotional injuries and does not bar claims for compensatory, nominal, or punitive damages. Id. at 630. Therefore, Plaintiff is not entitled to monetary damages in this case for emotional distress unless he also shows a physical injury.

### E.  Relief Requested

Besides monetary damages, Plaintiff requests declaratory and injunctive relief.

Plaintiff's request for declaratory relief should be denied because it is subsumed by Plaintiff's damages claim. See Rhodes v. Robinson, 408 F.3d 559, 565-66 n.8 (9th Cir. 2005) (because claim for damages entails determination of whether officers' alleged conduct violated plaintiff's rights, the separate request for declaratory relief is subsumed by damages action); see also Fitzpatrick v. Gates, No. CV 00-4191-GAF (AJWx), 2001 WL 630534, at *5 (C.D. Cal. Apr. 18, 2001) ("Where a plaintiff seeks damages or relief for an alleged constitutional injury that has already occurred declaratory relief generally is inappropriate[.]")

Also, any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part:

> "The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." 18 U.S.C. § 3626(a)(1)(A).

As injunctive relief, Plaintiff requests court orders compelling Defendants to "immediately remediate the substandard living conditions at SATF F-Yard [and to] immediately

insure that the F-Yard kitchen and dining facility comply with minimum standards of sanitation." (ECF No. 13 at 18 ¶VII

However, when a prisoner seeks injunctive relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. Pride v. Correa, 719 F.3d 1130, 1138 (9th Cir. 2013) ("When an inmate challenges prison conditions at a particular correctional facility, but has been transferred from the facility and has no reasonable expectation of returning, his claim is moot"); Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995) (finding prisoner's suit for library access to be moot upon his transfer to another prison). Once Plaintiff was released from SATF, where the alleged violations occurred, any claims for injunctive relief regarding conditions at that institution became moot.

Based on the nature of the claims at issue in this action, which involve past conduct, Plaintiff is not entitled to injunctive relief and is therefore confined to seeking money damages for the violations of his federal rights.

**V.      CONCLUSION AND ORDER**

For the reasons set forth above, the court finds that Plaintiff states cognizable claims for relief against Defendants Sherman and Milan for subjecting Plaintiff to adverse conditions of confinement in violation of the Eighth Amendment, but no other claims.

Accordingly, **IT IS HEREBY RECOMMENDED** that:

1. This case proceed with Plaintiff's First Amended Complaint filed on October 1, 2020 against Defendants Stuart Sherman and Richard Milan on Plaintiff's claim for adverse conditions of confinement under the Eighth Amendment, but no other claims;

2. All other claims be dismissed from this case based on Plaintiff's failure to state a claim;

3. The court decline to exercise supplemental jurisdiction over Plaintiff's state claims; and

///

      4.      This case be referred back to the Magistrate Judge for further proceedings, including initiation of service.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:   **January 31, 2021**                    **/s/ Gary S. Austin**
                                                        UNITED STATES MAGISTRATE JUDGE